IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA, | No. C06-03239 MJJ |
| Plaintiff-Respondent, | **ORDER DENYING IN PART DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |
| v. | |
| CRESENCIO ROSALES, | |
| Defendant-Movant. | |

## INTRODUCTION

Before the Court is *pro se* Defendant Cresencio Rosales' ("Rosales" or "Defendant") Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 based on his claim that he did not receive effective assistance of counsel. (Docket No. 1.) The United States ("Respondent" or "Government") opposes the motion.[1] For the following reasons the Court **DENIES** the Motion.

## PROCEDURAL AND FACTUAL BACKGROUND

The evidence in Defendant's criminal case developed from a wiretap investigation of a large heroin trafficking organization operating in the San Francisco Bay Area. (*See* Presentence Investigation Report 9 ("PSR")). The San Francisco Police Department ("SFPD") initiated the underlying drug investigation in 1999 and later referred the investigation to the Drug Enforcement Agency ("DEA"). (*See id*. ¶¶ 7-8.) During the investigation, the DEA obtained several court-

---

[1] Defendant, in his Reply, argues that Respondent's opposition was not timely filed. The Court's December 5, 2006 order in this matter granted Respondent until January 5, 2007 to file an opposition. (*See* CR 01-0423, Docket No. 593.) Respondent filed an opposition on January 5, 2007 and therefore Respondent's opposition was timely.

authorized wiretaps over telephones used by co-conspirators Elsa Florivet Diaz-Reyes ("Diaz-Reyes") and Heriberto Coria-Cerda ("Coria-Cerda") to conduct drug trafficking activities. (*See id*. ¶ 9.) Both Diaz-Reyes and Coria-Cerda were the suspected leaders of the heroin trafficking organization. (*See id*. ¶¶ 7, 9-10.) During the course of the wiretap investigation, all of the defendants in the case were recorded discussing what appeared to be heroin trafficking and/or money laundering. (*See id*. ¶ 10.)

On May 1, 2001, Defendant was intercepted in a telephone conversation talking with Coria-Cerda about a load of heroin that Coria-Cerda was expecting from Southern California. (*See id.* ¶ 11.) The heroin had gone to Washington State instead of the San Francisco Bay Area and so Coria-Cerda requested that Defendant take the delivery of "175 pieces" (or approximately 4.375 kilograms) of heroin that a courier identified as "Paco" would deliver. (*See id*.) Defendant and Coria-Cerda had several telephone conversations wherein they discussed the time and place of the heroin delivery. (*See id*.) They also held a three-way telephone call with the drug courier Paco wherein Defendant agreed to meet with Paco at a garage where the two could unload heroin into Defendant's truck. (*See id*.) However, Defendant never completed the heroin delivery with Paco because Paco was arrested by the police and the heroin was seized. (*See id*.) Defendant fled the scene but was subsequently arrested on November 12, 2001. (*See id*.)

On November 6, 2001, a sixty-eight count Indictment was filed in the Northern District of California in *United States v. Herberto Coria-Cerda*, *et al.*, CR 01-0423. Defendant was charged with Conspiracy to Distribute and Posses with Intent to Distribute one Kilogram or More of Heroin, in violation of 21 U.S.C. § 846; Possession with Intent to Distribute and Distribution of 1 Kilogram or More of Heroin and Aiding in Abetting in violation of 21 U.S.C § 841(a)(1) and 18 U.S.C. § 2; and with Use of a Communication Facility to Commit a Drug Crime, in violation of 21 U.S.C. § 843(b). Daniel Horowitz ("Counsel" or "Mr. Horowitz") was appointed to represent Defendant and served as lead defense counsel in the case. On January 20, 2004, a forty-nine count Superceding Indictment was filed in the case. Defendant was charged with the same offenses alleged in the original Indictment.

On February 24, 2005, Defendant entered into an 11(c)(1)(C) plea agreement with the

2

government. (Govt. Exh. 5, Plea Agreement ("Plea Agreement").) On that same day, Defendant pleaded guilty to Count One of the Superceding Indictment, the conspiracy charge. (*See* Govt. Exh. 6, Transcript of Guilty Plea Proceedings, *United States v. Cresencio Rosales*, CR 01-0423-05 MJJ, February 24, 2005 ("Plea Proceedings")). Pursuant to the Plea Agreement, Defendant waived his right to appeal his conviction and sentence, excluding an appeal based on a claim that his right to effective assistance of counsel was violated. (Plea Agreement ¶¶ 4-5.) He also waived any venue defenses and agreed not to request any reductions or downward departures in sentencing. (*See id*. ¶ 7.) Furthermore, he agreed not to appeal his sentence unless the Court imposed a sentence that exceeded 121 months imprisonment, five years supervised release, a fine, and a $100 special assessment. (*See id*. ¶ 8.) In exchange for his guilty plea, the prosecution agreed to dismiss any pending charges, not seek any additional charges, and recommend a 121-month prison sentence, along with five-year supervised release terms and a $100 special assessment. (*See* Plea Agreement ¶¶ 8, 14.) The Court, on May 19, 2005, sentenced Defendant to 120 months, five-years of supervised release and a $100 special assessment. (*See* Govt. Exh. 7, Transcript of Sentencing Proceedings, May 19, 2005 ("Sentencing Hearing Transcript") at 4:7-23.)

On March 15, 2006, Defendant filed this § 2255 Motion, which contains several allegations regarding Mr. Horowitz's conduct which Defendant claims resulted in ineffective assistance of counsel. Specifically, Defendant alleges that Mr. Horowitz was under-informed about the facts of the case, kept Defendant under-informed about the charges against him, gave Defendant bad advice about entering into the plea agreement, failed to advise Defendant of his rights and failed to file motions and objections that would have helped Defendant. Defendant also alleges that Mr. Horowitz failed to file an appeal when requested.

## LEGAL STANDARD

To prevail on a claim of ineffective assistance of counsel, a movant must prove both incompetence of counsel and prejudice to movant's case. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Williams v. Calderon*, 52 F.3d 1465, 1469 (9th Cir.1995). The *Strickland* two-part test also applies to challenges of guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The movant bears the burden of showing both prongs.

3

*Strickland*, 466 U.S. at 687.  Failure to make the required showing on either the "incompetence" prong or the "prejudice" prong "defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

There is no need to evaluate the counsel's performance if the movant fails to show that prejudice resulted from the counsel's alleged errors. *Strickland*, 466 U.S. at 697; *Hill*, 472 U.S. at 54. To establish prejudice, movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Williams*, 52 F.3d at 1469 (quoting *Strickland*, 466 U.S. at 694). The prejudice requirement in a challenge to the validity of a guilty plea on the ground of ineffective assistance of counsel

> focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill*, 474 U.S. at 60.

To establish deficient performance, the movant must first demonstrate that counsel not only committed errors, but performed outside the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance must be "highly deferential, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). The reasonableness of the counsel's performance is judged based on the facts of the particular case as they were known at the time of the counsel's conduct. *Bell v. Cone*, 535 U.S. 685, 698 (2002).

**ANALYSIS**

The Court reviews the record to determine if Defendant can show that the alleged errors committed by Mr. Horowitz were prejudicial. If Defendant meets that burden, then the Court will determine if Defendant has shown that Mr. Horowitz's conduct was deficient.

Here, Defendant does not argue that he would have pleaded not guilty and insisted on going to trial had Mr. Horowitz performed differently. *See Hill*, 474 U.S. at 60. In fact, Defendant's only mention of his interest in going to trial is his argument that "if trial counsel had fully discussed the

4

1 appellate waiver in association with the prosecutor's view of his then state of cooperation; he would
2 not have fared worse by insisting on going to trial." (Motion at 27.) Still, the Court assesses each of
3 Defendant's contentions to determine if the record reflects that there is a reasonable probability that
4 any of the claimed errors affected the outcome of the plea process. The Court addresses, in a
5 separate section, Defendant's claim that he requested that Mr. Horowitz file an appeal.

**1.    Defendant Fails to Show Prejudice From Counsel's Alleged Errors.**

In essence, the gravamen of Defendant's argument is that he was guilty of the charge that he used a communication facility to commit a drug offense, 21 U.S.C. § 843(b) ("§ 843(b) charge"), but not guilty of the conspiracy charge, 21 U.S.C. § 846 ("conspiracy charge"), the crime he ultimately pleaded guilty to. (*See* Motion at 17.) Defendant argues that Mr. Horowitz was under-informed of the law and facts and kept Defendant under-informed as well.[2] Mr. Horowitz's misapprehension of the situation, Defendant argues, led counsel to advise Defendant to plead guilty to the conspiracy charge, which carries a mandatory minimum sentence of 120 months. (*See id.* at 17-18.) Respondent, however, submits a declaration by Mr. Horowitz which contradicts this argument. Defendant's prior statements to this Court and his assertions in this Motion also contradict this argument.

Mr. Horowitz testifies that while Defendant admitted to certain conduct, Defendant did not think that the conduct amounted to conspiracy. The conspiracy charge has the following elements: (1) there was an agreement between two or more persons; (2) to possess with intent to distribute and distribute one kilogram or more of a mixture or substance containing a detectable amount of heroin; and (3) the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it. (*See* Plea Agreement ¶ 1.) Defendant, in his plea agreement and in the Plea Proceedings, admitted to, inter alia, agreeing with Coria-Cerda to take delivery of the heroin, joining a three-way call with Coria-Cerda and Paco, the courier, to discuss arrangements, and

---

[2] Specifically, Defendant argues that his counsel (1) rarely visited him; (2) failed to provide him with copies of the Superceding Indictment and other case documents; (3) failed to explain the nature and cause of the accusation; (4) failed to inform him of the elements of the charged offenses; (5) erroneously advised him to plead guilty to the heroin conspiracy charge underlying the Superceding Indictment; (6) failed to understand Defendant's factual or legal claims; (7) failed to explain the PSR; (8) pressured Defendant to plead guilty to the conspiracy charge; and (9) failed to advise him of his appellate rights or that he was waiving his right to appeal his conviction and/or sentence.

5

1 meeting up with the courier to follow-through with the plan.  (*See id.* ¶ 2; Plea Proceedings at 25-
2 26.)  In this Motion, Defendant restates the same admissions.  (*See* Motion at 5-6.)  However,
3 Defendant argues that because he never met Paco, never had possession of the heroin, and never
4 distributed the heroin, he was not guilty of the conspiracy charge.  (*See id.* at 6, 9, 12-13.)  Neither
5 actual possession, nor distribution, however, are elements of the charge.  (*See* Plea Agreement ¶ 1.)
6 Given this, Mr. Horowitz repeatedly advised Defendant that the conduct amounted to conspiracy,
7 and that the Government had recordings of Defendant which established the requisite elements.  (*See*
8 Govt. Exh. 2, Horowitz Decl. ("Horowitz Decl.") ¶ 9.)

9 Still, Defendant was reluctant to enter into the offered plea agreement because Defendant
10 believed that ten years, the mandatory minimum for the conspiracy charge, was too much time.  (*See*
11 *id.* ¶¶ 9, 13.)  Mr. Horowitz strongly urged Defendant to plead guilty to the conspiracy charge
12 because it was the only plea deal the Government was willing to offer.  (*See id.* ¶ 13.)  In addition, if
13 Defendant went to trial, Mr. Horowitz was concerned that the Government would have filed notice
14 of Defendant's prior conviction.  (*See id.* ¶ 15.)  As a result, at trial Defendant would face a
15 mandatory minimum sentence of 20 years in prison and, given the evidence against him, conviction
16 was likely.  (*See id.* ¶¶ 14-15.)  Shortly before trial, after a settlement conference with Judge Patel,
17 Defendant entered into the plea agreement.  (*See id.* ¶ 18-19.)  The day of Defendant's guilty plea,
18 Mr. Horowitz noted that Defendant had some trepidation about pleading guilty.  (*See id.* ¶ 22.)  At
19 that point, Mr. Horowitz thought it was wise for Defendant to accept the plea agreement, but was
20 ready to proceed to trial if Defendant did not enter the plea.  Defendant entered the plea.  (*See id.*).

21 On this record, therefore, Defendant fails to show how Mr. Horowitz's alleged errors were
22 prejudicial.  Even if Mr. Horowitz failed to appropriately communicate with Defendant, or
23 understand Defendant's situation, the record does not show that Defendant could have secured a plea
24 deal with a lower sentence or that he could have gone to trial and obtained a lower sentence.  Nor
25 does the record reflect that Defendant would have insisted on proceeding to trial if Mr. Horowitz had
26 performed differently.  Thus, Defendant has not shown that he was prejudiced by Mr. Horowitz's
27 alleged errors or allegedly erroneous advice.

28 Next, Defendant contends that he did not understand the charge against him, or the contents

6

of his plea agreement, including the waiver of right to appeal. The record, however, does not support this argument. Defendant signed a written Plea Agreement indicating that he understood and agreed to the elements of the offense and the maximum penalties for the count, that he was guilty of the offense to which he pleaded guilty and that he gave up certain rights by signing the agreement. (*See* Plea Agreement ¶¶ 1-11.) Defendant further confirmed that he had adequate time to discuss this case, and that his attorney had provided him with all the legal advice that he requested. (*See* Plea Agreement ¶ 4.) Defendant also confirmed that his decision to enter a guilty plea was "made knowing all the charges that have been brought against [him], any possible defenses, and the benefits and possible detriments of proceeding to trial . . . that [his] decision to plead guilty is made voluntarily, and not one coerced or threatened [him] to enter into this agreement." (*See* Plea Agreement ¶ 5.) In addition, Defendant confirmed that he entered into the plea agreement with the assistance of an interpreter and in the presence of his attorney. (*See* Plea Agreement ¶ 5.) Moreover, Defendant appeared before this Court at the plea hearing, recounted the events that gave rise to the charges against him, affirmed that he had signed and understood the written Plea Agreement and reiterated that no "threats of promises" had been made to him other than the plea agreement itself and entered a plea of guilty. (*See* Plea Proceedings ¶¶ 6, 12, 22-27.) Thus, any information that Defendant's counsel allegedly failed to relay to Defendant was later provided and explained to him by way of the plea agreement and by the Court at the hearing. In addition, this portion of the record again does not indicate that Defendant would have gone to trial absent the alleged error by Mr. Horowitz. Thus, Defendant has not shown that he was prejudiced by Mr. Horowitz's alleged errors regarding the contents of his plea agreement.

Finally, Defendant argues that Mr. Horowitz failed to explain the PSR to Defendant, failed to file objections to the PSR, failed to object to the applicable guidelines or argue for any downward departure and failed to file certain motions. Defendant, however, has again failed to show how any alleged error by Mr. Horowitz prejudiced Defendant. Mr. Horowitz testifies that he met with Defendant to discuss the PSR and Defendant had no objections to it, nor did Mr. Horowitz perceive anything in the PSR that he could challenge. (Horowitz Decl. ¶ 24.) Defendant here points to no objections that Mr. Horowitz should, or could, have made. In addition, the conspiracy charge to

7

which Defendant pleaded guilty carries a minimum mandatory sentence of ten years. *See* 21 U.S.C. §§ 846, 841(b)(1)(A). Despite Defendant's citations to *Blakey v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 543 U.S. 220 (2005), mandatory minimum sentences are unaffected by *Booker*. *See United States v. Gomez*, 472 F.3d 671, 673 (9th Cir. 2006) (explaining that "we have consistently upheld mandatory minimum sentencing schemes against constitutional challenge"). In addition, Defendant does not show which, if any, departures from the mandatory minimum sentence he was entitled to. However, the Government puts forth evidence that Defendant was not eligible for safety-valve consideration under 18 U.S.C. § 3553(f) given his prior conviction and was not interested in cooperating with the Government. (*See* Horowitz Decl. ¶¶ 8, 13.) *See United States v. Cardenas-Juarez*, 469 F.3d 1331, 1334 (9th Cir. 2006) ("When the statutory safety valve requirements of § 3553(f) are met, district courts still must consult the Guidelines and take them into account when sentencing, even though they now have the discretion to impose non-Guidelines sentences.") (quotations omitted). Furthermore, Defendant does not show how his counsel's failure to challenge the court's jurisdiction, file a motion to dismiss on speedy trial issues or file a motion for severance prejudiced his case, given that, inter alia, Defendant and the other co-defendants agreed to exclude time under the Speedy Trial clock and, according to Mr. Horowitz, there were no jurisdictional issues nor any basis for filing a motion to sever Defendant's case. (*See* Horowitz Decl. ¶ 26.) Thus, Defendant has not shown that there was any prejudice to the length of his sentence by Mr. Horowitz's alleged errors regarding filing motions or objections to the sentence or the PSR.

In sum, Defendant has not shown how Mr. Horowitz's alleged errors were prejudicial. Defendant does not establish what, if anything, Mr. Horowitz could have done which could have changed the outcome in Defendant's favor. Nor has Defendant established that he would have proceeded to trial if Mr. Horowitz had given him different advice. Instead, the record shows that Mr. Horowitz informed Defendant of his options and advised him to take the plea agreement rather than risk receiving a mandatory minimum sentence of twice as many years if he proceeded to trial. On this record, therefore, while Defendant alleges deficient performance by Mr. Horowitz, the Court cannot find that Defendant was actually prejudiced by Mr. Horowitz's representation. Accordingly, habeas relief is not appropriate on this claim. The Court therefore need not determine whether Mr.

8

Horowitz's performance was deficient.

In addition, an evidentiary hearing is not required on these issues. An inmate filing a claim for federal habeas relief under 28 U.S.C. § 2255 is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255 ¶ 2. The Ninth Circuit has explained that, under this standard, an evidentiary hearing is not required when a movant's allegations "do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *U.S. v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (internal citations and quotations omitted). Mere conclusory statements in a section 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993); *United States v. Hearst*, 638 F.2d 1190 (9th Cir. 1980). Defendant's allegations, even if true, fail to show prejudice. Therefore, given the record before the Court, no evidentiary hearing is required to determine that Defendant is not entitled to relief.

**2. The Court Must Hold an Evidentiary Hearing to Determine Whether Defendant Requested Mr. Horowitz to File an Appeal.**

Defendant argues that Mr. Horowitz failed to file an appeal on his behalf "as requested." (Motion at 22.) "[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). Failure to file an appeal when a defendant so requests is professionally unreasonable even if the potential appeal lacked merit or was contrary to the plea agreement. *See United States v. Sandoval-Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005). In terms of the *Strickland* standard, it is both deficient performance and prejudicial for an attorney to fail to file an appeal on explicit instructions from a defendant to do so. *See id.* "The prejudice . . . is that the defendant lost his chance to file the appeal, not that he lost a favorable result that he would have obtained by appeal." *Id.* Thus, when there is a dispute as to whether the defendant explicitly told his lawyer to appeal, the district court should hold an evidentiary hearing to decide whether the defendant's allegation is true. *See id.* at 1198.

Here, Defendant does not explain what the contents of his appeal would have been, nor does he state when or how he requested Mr. Horowitz to appeal. His statement is simply that "counsel

9

failed to file an appeal as requested." (Motion at 22.) On the other hand, the Government objects to this claim and Mr. Horowitz testifies that Defendant never asked him to file an appeal. (*See* Horowitz Decl. ¶ 21.) This matter, therefore, cannot be resolved without an evidentiary hearing. *See Sandoval-Lopez*, 409 F.3d at 1198. The Court will therefore schedule an evidentiary hearing to determine if Defendant's allegation that he explicitly requested Mr. Horowitz to file an appeal is true.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Vacate, Set Aside, or Correct his Conviction or Sentence pursuant to 28 U.S.C. § 2255 for all claims except Defendant's claim that counsel failed to appeal when Defendant so requested. The Court shall, as soon as is practicable, schedule an evidentiary hearing to determine the outcome, and potential remedy, for this one outstanding issue.

**IT IS SO ORDERED.**

Dated: March 25, 2008

MARTIN J. JENKINS
UNITED STATES DISTRICT JUDGE